which is 20-13651 South River Watershed Alliance versus DeKalb County, Georgia. All right, feel free to get settled, but we have Mr. Schwartz here for the appellants and Mr. Silliman for the appellee. And someone filed some supplemental authorities this morning. Who was that? I did, Your Honor. Okay. So it's fine that you filed them. Please know that you need to file them electronically as well. Yes. And then, of course, you guys can respond to them as you see fit. Just know, if you're going to talk about them today, at least speaking for myself, I haven't read them. I understand. Okay. Very well. You can proceed when you're ready. May it please the Court, DeKalb County is violating the Clean Water Act by spilling millions of gallons of raw sewage every year. A consent decree required the county to repair one-third of its sewer system and refer to the other two-thirds of the system as non-priority areas. The district court acknowledged the consent decree didn't establish a deadline to stop spills or repair the non-priority areas, but the court held that the consent decree and the government's enforcement of the consent decree was diligent prosecution that precluded the alliance's citizen suit. The Clean Water Act has several diligent prosecution sections, and the one at issue here is 33 U.S.C. section 1365b1b. And under this subsection, citizen suits are precluded if the government has commenced and is diligently prosecuting an action in court to require compliance with the act. But according to the district court, the government's prosecution is entitled to a heavy presumption of diligence that can only be overcome if the enforcement could be considered dilatory, collusive, or otherwise in bad faith. So let me ask you a quick question. Is your position, I understand you don't like the presumption of diligence, but is your position that in order to qualify as diligent prosecution, the government's enforcement action has to actually achieve compliance with the Clean Water Act, or it needs to be like the old college try, or what is it? So if we're dealing with a situation like we're in here where there's an ongoing consent decree that hasn't been terminated yet, then what the court should look at is, first of all, based on the words of the consent decree, is it capable of requiring compliance with the Clean Water Act? And also, if you're already into implementation of the consent decree, what the courts look at is post-consent decree compliance. So, for example, one of the cases I brought this morning, it's a First Circuit case that came out after the briefs were filed in this case. What they were looking at was the district court dismissed, but the First Circuit reversed and said, well, the plaintiffs alleged that, and it was a plausible allegation, that because of the government's failure to enforce the consent decree, there were ongoing sewage spills. And that, in part, is what we have here. So can I just interrupt you there? I thought, and maybe I'm wrong about this, I thought your problem with the consent decree was not so much that the government was not enforcing it, but that the consent decree itself was just not designed or reasonably calculated to achieve compliance with the Clean Water Act because it didn't have a deadline and things like that. Did I miss something? It's both. And so part of our appeal is based on the fact that two-thirds of the sewer system has no deadline, there's no deadline to repair it, and there's nothing in there that would coerce the government, DeKalb County, into repairing that portion of the sewer system. They actually have a financial incentive not to repair it. But there's also an issue, which we raised, which has to do with the failure to, the county's failure to comply with the consent decree. And so, for example, the First Circuit and the Seventh Circuit have looked at post-consent decree compliance and whether that has relevance to diligent prosecution, and if they're not enforcing it in a way that's causing spills to continue or delaying compliance, then that is not diligent prosecution. And here, the issue with the noncompliance is primarily, well, there's two issues. One has to do with there was an eight-and-a-half-year deadline to repair the priority areas, and that deadline passed. They're nowhere near doing that. And the reason that they're nowhere near doing that is because of the other issue, that there's noncompliance, is that the consent decree had a deadline for coming up with what was called a dynamic hydraulic model. And essentially what this is, this is a computer model that allows the county to understand what's happening in its sewer system. The consent decree said it was necessary in order to repair the system, and the county, by their own admission, squandered the first six years of the consent decree, essentially doing very little. There's political interference, but what happened with the dynamic hydraulic model is when it became clear that they weren't going to have this model on time, the EPA and EPD authorized DeKalb County to proceed with what's called a static model. And so basically what they're doing is they're using average flow conditions to see what would happen under, like, when they add new sewer connections, for example. So let me ask you a question, Bud. So just a practical question. Both of these cases, the consent decree case and the new case you filed are in front of the same judge. What do you gain? What benefit is there? How does, as a practical matter, there's some difference with you having a case, a new case about the consent decree versus just going to the judge who has the consent decree case and saying, Judge, they're not following the consent decree. This is a huge mess. DeKalb County is not doing a good job. The government's not enforcing it. We think you should do something else. What's the difference? Sure. Well, there's a couple answers to that. And one is that the consent decree was in front of Judge Duffy, but when he retired it went to Judge Greenberg. Well, just as a practical matter, I mean, having been a district judge for, like, six months, the same judge is going to get these cases. I mean, they're not going to divide them up. So it's always going to be the case. No, I understand. We filed it as a related case. So first of all, my client, the South River Watershed Alliance, did do what I'm saying. So from the time that the consent decree was approved in 2011 until we filed in 2019, the only thing on that docket was two letters from South River Watershed informing the court that they weren't complying with the consent decree and then a leave of absence from the state of Georgia. So they did try and approach that. But our complaint here is not about the consent decree. We're not saying the consent decree is not good enough. The state and EPA had the discretion to enter into the consent decree. They had the discretion to not enter into any enforcement action. But what they did was they decided to take an enforcement where they were going to focus on one-third of the county sewer system. Now, they might have had other enforcement priorities. Whatever it is, that's within their discretion. And we're not saying that they acted improperly. But what we're saying is we're not actually making this case about the consent decree. The relevance of the consent decree in our Clean Water Act citizen suit is that the consent decree is not diligent prosecution, which precludes our suit. Because the Clean Water Act citizen suit provision allows a citizen to file a suit to enforce Clean Water Act discharge limits. And each sewage spill is a violation of the Clean Water Act. We're trying to enforce those requirements in the non-priority areas, the other two-thirds. What we're trying to do with this lawsuit is to compel the county to repair the other two-thirds of the system. I mean, there's millions of gallons of sewage coming from this non-priority area. The non-priority area is actually responsible for the majority of the sewage spills and the majority of the spill volume. It just got left out for whatever reason of the consent decree. Let me ask you this question, because I think you make a good point about sort of the executive priorities and enforcement. Let's just assume there were no consent decree, and instead we were at the spot where the government had just filed the lawsuit, right? So the government files a lawsuit, and in its complaint, it requests that the court order the relief that this consent decree provides. So complaints filed, the government says, this is the relief we want, we want this injunction. It's an ongoing injunction that addresses this sewer system in this particular way. Would that necessarily not be diligent prosecution, because that was the relief that they were requesting in the lawsuit? And under your example, you're saying it's the same consent decree that we have? Yeah, they're requesting this as an injunction instead of having already gotten it. So, okay, as an injunction, the court, if that's all they're requesting, it would not be diligent prosecution, because, again, looking at the consent decree, there's two-thirds of the system that is not going to be brought into compliance. There's not a single circuit court that has looked at this. There's no similar facts where a case was dismissed. And even the circuit courts that have mentioned the bad faith standard haven't applied it. Well, I guess, and I think that's the right answer for your position, which is that even if the government were just in the process of pursuing an injunction like this, that that would, in your position with that, that would be not diligent prosecution. But the problem I have with that is that seems that that would, assessing this question about is it really diligent prosecution because of the remedy that's being requested, just really puts us in the middle, puts the courts in the middle of sort of second-guessing the executive's enforcement priorities and why they want a particular remedy in a particular case. Can you say anything about my concern that this view of, well, we look at the remedy and see if the remedy is good enough, if that's the definition of diligent prosecution, then wouldn't we always have to just like really delve into why the government is requesting what it's requesting? Yes, my time is up, but I would like to answer your question. Okay, so the real separation of powers concern here is not about the court second-guessing the administrative or executive branch, but it's really about courts rewriting the statute. The statute itself is unambiguous, and really the phrase here— Well, you think the word diligent is unambiguous? The part that I'm focusing on, because this court, and I can address the court's questions about diligent prosecution in the tense, but really the diligent prosecution part of it doesn't matter if there's not requiring compliance, because whatever diligent prosecution means, it must require compliance. It says to require compliance. And so there's no other cases where there are ongoing spills that there's no requirement to fix, and they've still said we're not going to allow a citizen suit. And so where the error comes in here is that this district court in Connecticut in 1986 created this standard where they said, well, there's a presumption of diligence, and we don't even argue whether there is or isn't a presumption of diligence. Some circuits have applied it, some haven't, but the problem is not the presumption of diligence. The problem is when you say the only way to overcome that presumption of diligence is by a strong showing of bad faith or dilatory conduct. Now, that is really rewriting the statute. And so to require compliance, you can look at this consent decree. The district court here did this and found that there's nothing in it to require them to stop spills in non-priority areas. They're allowed to – now, it's a violation of the Clean Water Act, it's a violation of their permit, but they could be in compliance with the consent decree and continue spilling sewage in perpetuity. It's not going to fix it. Can I ask you a question about that? Yes. And maybe I just don't understand the record, but I thought that there were fines in place under the consent decree for the spills. Yeah, but see, the fines – this court in the Atlantic States Legal Foundation versus Tyson, also the Supreme Court has said this. In order for a fine to be sufficient to compel compliance, it has to be enough so that it outweighs the economic benefit to the violator. Now, here we're not alleging that the fines should be higher, because we understand that it's policy considerations, the money really should be going to fixing the sewage system, not to paying fines. But here, the fines for over a thousand spills over the eight years before we filed a lawsuit were just under $800,000. That provides an economic incentive to continue delaying. So the stipulated penalties plus – the stipulated penalties not only create an incentive to stop it, so it can't meet the definition. The courts have said to require compliance means to coerce compliance. If it's through penalties, it has to be enough to make that happen. But also, the penalties are just – well, let me ask you – can I ask a few more? So with respect to require compliance, I agree. I think that's a better point than diligent prosecution for you. So I think that that makes more sense than focusing on the diligent prosecution prong. But it seems like – just address this issue, I guess. So the Clean Water Act is not sort of a binary thing where you comply with it today and you don't have to worry about it anymore, right? It's not like paying your taxes where once you pay your taxes, you're done with those taxes, you don't have to pay it. It's always going to be an ongoing thing, especially for a sewer system. I'm concerned about your view of require compliance because there's always – I mean, no matter what this sewer system does, it's always going to violate the Clean Water Act, right? Like every sewer system does. Okay. So first of all, this court could reverse without even addressing the post-compliance issues because the consent decree itself doesn't require compliance. But what I would like to draw the – But you're saying require compliance means become entirely 100 percent compliant with the Clean Water Act going forward, right? That it has the ability to do that. And this one does not. It doesn't – so what courts have said when you're looking at what does that mean – like, for example, Weinberger, Barslow, the Supreme Court case, they're basically saying if a district court's looking at the scope of injunctive relief, they don't have to order the discharge to stop, but there has to be something that will coerce compliance, some manner of doing that. And that can be civil penalties, whatever it is. But here there's nothing in the consent decree to do that. But what I would like to just address with the court on this one issue, with the question you're asking, is that in the other case that I – one of the other cases I brought this morning, Ohio Valley Environmental Coalition, when DOJ and the polluter were filing a motion to approve the consent decree, one of the parties in a subsequent citizen suit asked in the comment period whether the consent decree would preclude a subsequent citizen suit. And what the – what DOJ responded, and this is in the district court's decision denying a motion to dismiss the citizen suit, DOJ responded whether or not future citizen suits are precluded by some legal doctrine outside of the consent decree is a termination most appropriately made based on whether defendants are in compliance with the law or consent decree at the time of a future suit and the actions of EPA and the states in response to any noncompliance. And so here, again, this court doesn't even need to look at subsequent post-consent decree compliance, but the EPA and the state allowed noncompliance by authorizing them to miss the deadline for the dynamic hydrochemical model. Now, the consent decree had a procedure in place to modify it, but they didn't do that. They just – and the district court made the finding, even though the district court said that the consent decree itself is not diligent prosecution, but that the government's enforcement of it was diligent prosecution. But the district court also found that DeKalb was violating the consent decree with the permission of EPA and APD. And what that's done here is put them just many, many years beyond where they would have been to even fix what the consent decree required, the one-third of the sewer system in the priority areas. They still don't have this dynamic hydraulic model, which they should have had years ago. And according to our expert, because this motion was filed under 12b-1, we responded that it should be 12b-6, which the court agreed with, but we filed expert reports in case they decided under 12b-1. And what our expert said was they can't even really begin to plan on fixing the sewer system until they have this model, which EPA and APD allowed them to not have. Okay. Let me ask Judge Branch if she has questions. I do. Let me just tell you what I'm struggling with. You have said a couple of times our complaint is not about the consent decree. But I guess I'm not sure that I see that that's correct, because all of your complaints are tied to the terms of the consent decree or the modification that EPA and APD have allowed to the consent decree. So it seems to me that, in fact, you are complaining that the consent decree itself is not ever going to lead to compliance with the Clean Water Act. And if, per what the record shows, modifications have been allowed to the consent decree, fines are being assessed, how is that not diligent prosecution? Yes, Your Honor. And so when we say that we're not complaining about the consent decree, so we are not asking the court to set aside the consent decree or to declare it invalid. This is not a collateral attack on the consent decree. But the reason the consent decree is so central here is because that is what DeKalb County is relying on to show that there's diligent prosecution. And what we're saying is that to be what's referred to as diligent prosecution, but really what it means is to preclude a citizen suit under 1365b1b, the enforcement has to, quote, require compliance with the Clean Water Act. And this consent decree cannot do that. And so what courts will look at when there's already been a settlement and there's a challenge when there's a citizen suit because of ongoing violations, the courts will look at whether the consent decree has a realistic prospect of ultimately stopping the Clean Water Act violations. Now, how long that can take is the agencies are entitled to deference on that. How to get there, they're entitled to deference. But what they're — and we're not even saying that they shouldn't be entitled to deference on what they asked for. Like, they have prosecutorial discretion to ask for as much or as little as they want, as long as there's not improper reasons for doing that. But they're not — if it won't get — if it won't coerce compliance, if it won't ever lead to compliance, which is what we have here, they could comply with the consent decree. They can terminate the consent decree. They still won't be in compliance with the Clean Water Act in the non-priority areas. And even fixing the priority areas can exacerbate problems in the non-priority areas because, as our expert has stated, there's essentially three sewer sheds here. There's one sewer shed that goes to one DeKalb County treatment plant, one that goes to another DeKalb County plant, and one that goes to an Atlanta plant. And within each of those, when you start making repairs in one section, it can cause spills in another section because you're plugging up holes one place and then it just sends it somewhere else. But here, this just won't lead to compliance. There's just not a single case in any circuit where you can look at similar facts where there will be ongoing violations but it's still diligent prosecution. And just understand that this is not EPA or EPD asking for a deference to their decision here. If EPA or EPD thought that this is going to interfere with their future enforcements or that they intended for this to actually fix the whole system, they seemingly would have filed an amicus brief. But when you look at how DOJ has responded to the question of whether a consent decree in that West Virginia case would preclude a subsequent citizen suit, they're essentially saying, look to see compliance. Now, yes, if they enter the consent decree and you read the consent decree and it seems like, yes, there's a realistic prospect of it ultimately fixing the problem, but it's understood these problems are going to take years to fix and it's going to take some time. But we're past that point now. So even if this Court did think that the post-consent decree compliance was crucial to our success, you can look and see the record on what's happened and it hasn't been enough. I mean, it's been more time than between when John F. Kennedy said that America was going to send a man to the moon and it actually landed on the moon. It's been longer than that. And they still have almost not even any of the models. They're supposed to have 33 dynamic hydraulic models that they integrate into one model for the whole system, and they had, like, two of them by the time we filed. Okay, Judge Branch, do you have any further questions? I do not. Okay, so let's hear from your adversary. Thank you. You'll have your full time on rebuttal. Mr. Silliman, do I have that right? Yes, Your Honor. Thank you. Good morning, Your Honors. May it please the Court, my name is Todd Silliman and I represent DeKalb County. The trial court correctly dismissed the case below because USEPA and Georgia EPD are diligently enforcing, through the consent decree, an action in federal court to acquire compliance. Can I ask you just to address my fixation with the language of the statute which is framed in the present tense? This recalled to me the infamous, it depends on what the meaning of the word is, is, I mean, the statute does say, it doesn't say is diligently enforcing, it says is diligently prosecuting. And it strikes me that prosecution and enforcement are two different things, at least as I just sort of ordinarily kind of walking around sense. I think that you would prosecute an action to get a judgment or a consent decree and then at that point, having gotten it, you would enforce it. And so just to kind of test this theory, I did just some random searches on Westlaw to see what I could find. If you look for enforce within so many words of consent decree, you find billions of hits. If you search prosecute within a certain number of words of consent decree, you come up with almost nothing. Okay. Yes, Your Honor. Three quick responses to that. First is there is a Third Circuit decision directly on point. I've read it. I mean, I have to tell you, I like recoiled in horror at what the Third Circuit said. The Third Circuit said something like, yeah, we're not bound by like literal or grammatical construction of this, which is like precisely what I think we're here to do. Well, Your Honor, the rationale, and this really gets to the heart of the Court's follow-up question and the series of questions that you sent us, has to do with what's the nature of a consent decree. And one of the things the Third Circuit says is that the very purpose of a consent decree is speedy and efficient means to enforce an order mandating compliance. And if you think about it, there's really no other way. When you have a large system like this, 2,600 miles of sewer line, it took many years for it to get into this mess. It takes years to get out. So really the only way, and I think even my opposing counsel would indicate that the only way to do something like this is through a consent decree, requires four looking remedies, punishes noncompliance, and by necessity, the only way that the agency is able to enforce compliance is through such a remedial measure is through such a consent decree. If you think about what the alternative would be, let's say that we should interpret it to provide that the day after the consent decree is entered, the prosecution is over, and it's open season for consent decrees. First of all, you'd have the agency and the regulated party having spent two years negotiating this, and then the next day there's a spill, the consent decree comes in, and contrary to what Mr. Schwartz said, that directly threatens the consent decree because what it allows the suit to do is to bring an action claiming violations and seeking all new court remedies to address those. And as the court has held in the Sixth Circuit has said, is second guessing an EPA's assessment of appropriate remedy not only fails to respect the distribution enforcement authority, but it threatens the very structure of the Clean Water Act. That's what Gwaltney says in the Supreme Court. It says the agency could never resolve noncompliance through a combination of remedy and fine if immediately thereafter a citizen's group could come in and seek a higher penalty. It would stifle the agency from doing its job, and certainly no regulated entity would ever commit to the hundreds of millions of dollars in remedy and stipulated penalties if a citizen group could then come in and say, well, you know, we're just going to tack on to that, and we want higher fines, and we want a deadline, and we want this, that. So, I mean, I take your response to my question to be, and I'm not saying it's a bad response, but I think the response is like, come on, judge. That's not the world we live in. You don't really want to take on the language of the statute. You want to say we can't possibly live in that world. Well, Your Honor, I would suggest that diligently prosecuting can include enforcing a decree that if you consider, you know, it is, one, the agency leaves open the remedy, its remedies, right? If you look at the consent decree, all it does is it resolves past spills. As to future spills, it says the agency has the authority to bring an injunction or other relief. Now, it sets in place a presumptive remedy and with required measures to meet that remedy and fines, and that's to make the enforcement process more speedy so you're not perpetually in court. But I would say it certainly is current prosecution because the alternative would be, and maybe this is a little bit of what you're saying, but I can't understand any other way it could be prosecuted. Does it matter at all from a, just from a factual or procedural perspective in this case that the decree was, you know, the judgments entered, consent decree was entered in 2011, seemingly almost nothing happens for eight years. They file in 2019. So at the time they filed, was the case kind of closed-ish? And was there anything diligent happening in those intervening eight years? An awful lot was happening, Your Honor. On the docket, or you're just going to tell me sort of like behind the scenes or something? Well, I think one thing is that the lack of activity in the docket is somewhat indicative of what all was happening because had the county not been delivering on what it was supposed to deliver, and no one's saying that the performance was perfect and it's gotten a lot better, but they had these what we call CMOMs, you've probably seen that acronym, and that had to be developed. They had to begin doing the assessments and the work in the field. An awful lot of work was done in the field. It's cited in our brief as of the time that the citizen suit was filed, all the miles of pipe that had been replaced and manholes replaced, et cetera. So an awful lot of work was happening, Your Honor. I would like to say that, and I think the Court has alluded to this, but under the case law, the focus for diligent prosecution is on the decree itself. And the cases that have considered post-decree evidence as to diligent prosecution are focused on not the how, but the whether. And I'm going to talk about the Saballero case that Mr. Schwartz cites, but the post-decree record, if it's indicative that there is not even any intent to address some portion of the problem, that can be relevant. It's indicative, well, they must have never intended. That's the Saballero case. In that case, it was undisputed evidence that there were portions of the system that they had no intention of fixing. And the government's response to the notice letter for the citizen suit in response to complaints about spills in certain areas was, we think the sewer is in good shape in those areas. So clearly there was no intent to fix those areas. It's the same with the district court decision that's out of West Virginia. In that case, the evidence was that there was no plan to achieve compliance with the requirements of the permit. And something that Mr. Schwartz keeps saying, and this is directly contrary to fact, it's directly contrary to his brief, when he says there are two-thirds of the system that are not being addressed, it is flatly incorrect. The entire system is subject to the decree. Eleven of the 12 CMOMs cover the entire system. The entire system must be fixed. The only CMOM that does not apply to it is the PASART because that's the priority areas. And they had to give priority. The idea was, we need to give priority to something. If you give the same priority to everything, you don't give priority to anything. And so they selected what are the highest risk areas of spills. We're going to set a deadline to get those done first. Everything else, however, just because there's no deadline, Your Honor, there are required measures and steps that are required to be taken that include assessments and inspections, and these have to be captured in reports, and they can be audited by the agency. So absolutely, the entire system must be fixed. And if there were a portion of the system that were exempted from this, I would agree. That would not be diligent prosecution. The entire system is subject to the decree. The decree requires compliance of the entire system with the Clean Water Act. It states it in its purpose. Its contents indicate that. In one place, again, the alliance somewhat contradicts itself in its brief. In one place, it says, well, it's not covered. And then on page 7 of the brief, it says, well, yeah, it applies to those other areas, but that's just routine maintenance. Well, if you read pages 56 to 58 of the consent decree, that strongly belies the point of routine maintenance. It talks about assessment, rehabilitation with required deliverables and inspections and whatnot, and so that's absolutely not the case. Can I just get you to shift gears briefly, and will you tell us whether you think the district court was right or wrong to recognize this presumption of diligence? And if so, where does that come from? It feels kind of made up. Well, and this gets to the point that we addressed in our supplemental brief at your request, Your Honor. Interestingly, no court has ever tied the presumption of diligence with the presumption of regularity. I don't know why, because the presumption of regularity, I would venture to say, was made up too, right? But it's over 100 years old, and the Supreme Court has applied it repeatedly. The same rationale for the presumption of regularity applies to the presumption of diligence. They look at the same two reasons, right? One is the agency, we entrust the agency with greater expertise in certain areas, such as what kind of a model should be applied and whether there ought to be a deadline or something else. The other is the desire to avoid intruding on the ability of the agency to do its job. And so that underlies the presumption of regularity. Those same two factors are applied in the presumption of diligence. So I don't... You're not saying, I guess, that they're exactly the same, just that they're sort of akin, because I think at least I understand, or I think I understand, that to rebut the presumption of diligence, at least as it has arisen in these cases, would take more than it would to rebut the presumption of regularity. The presumption of... Rebutting the presumption of diligence seems to require something like a showing of bad faith or, you know, sort of collusion or something, right? Correct. Right, but we don't require that kind of showing to rebut the presumption of regularity, do we? So this is like an uber-presumption or something. Well, you know, one thing that I happen to agree with Mr. Schwartz on is what the test is for diligence, and I don't believe it is necessarily, you know, bad faith. That certainly can be one basis, but it's whether the remedy is capable of achieving compliance and in good faith calculated to do so. And so if, again, to use the example, whether a... I suppose this would be indicative perhaps of collusive or bad faith conduct, but if a consent decree were to address only part of a problem and completely neglect substantively, for example, a certain effluent limitation at a facility that was alleged to be in violation or a whole part of the sewer system is just not even addressed, that would fail for a diligent prosecution. How that would relate, I think that the way that I find that the two doctrines relate to one another, and the briefing got a little far afield in talking about Chevron and whatnot, which is totally different, is this is talking about actual practice and performance of duties. We're really not talking about the agency's interpretation of the statute here. The agency hasn't determined diligence. That's what the courts do. But what we're talking about is deference that is to be given to the performance of the agency's duties so that we don't interfere with those. And there could be no greater example than this one of the intrusive effect that displacing this remedy would have than allowing the citizens to begin. We're talking about, again, this is upwards. These improvements are projected to cost upwards of a billion dollars. One can imagine all of the bond financing, et cetera, that goes into that and the bond ratings and all the things that you have to do to bring about a remedy such as this to say, well, you know, you've had long enough. The statute doesn't say this, but we've concluded that, you know, this many years is enough. Let's let the citizen have a try, and let's let them litigate and determine what their remedy is. All the work that's being done in the field, the many people who are working at great cost to improve the system, and the government, most of all,  would be significantly affected and chilled if a case like this would be able to proceed in the face of this prosecution. Can I ask you one other question, sort of looping back to something that Judge Brasher asked her adversary about sort of interfering with executive prerogatives? Obviously, that interference is most acute, I suppose, in a case like this where there's, like, setting aside my line of questioning about is, was, all that stuff, but there's something clearly going on. You know, sort of the federal government is clearly doing something. Whether that's prosecution, enforcement, whatever, it's clearly doing something. Is there a similar level of intrusion wholly in the absence of a government enforcement action? Does the citizen-suit provision allowing plaintiffs to bring this action in the first place? Forget about it. Let's assume that the EPA has looked into this and has decided, like, it's just not that big a deal. We're not going to take an enforcement action. Does the citizen-suit provision interfere with executive prerogatives in deciding we have concluded that there is nothing here to enforce? Does that make sense? Yes, Your Honor. Well, first I would say, I would acknowledge that Congress set forth a citizen-suit cause of action, which is designed to be, as the Supreme Court said, interstitial and not intrusive. And so if the government decides or fails to prosecute at all, that is when the citizen can step in. Now, the citizen would then have to prove its case, and if there were good reasons why the agency had not prosecuted the case, such as there's no violation, then that case would be dismissed and there would be no intrusion. If there were no explanation for the government's failure to prosecute, they just look the other way, that would be a different matter. And that just brings one more point, Your Honor, just on that point. The diligent prosecution bar is not there to protect regulated entities. It's not there to protect polluters. It is there to protect the authority of the United States or the state to bring effective enforcement. And so DeKalb County is not looking for a break here. They're not looking to not have to fix something. They're trying to implement a remedy and have spent a lot of money doing so and intend to complete it in due course. They want to be allowed to do so. And just one last point, Your Honor, just about the point about EPA and EPD not intervening. Not, I don't know, two months ago, there was another modification of the decree. This is in the docket of the district court. And not only has a dynamic model been adopted, but in both instances, both in the entry of the initial decree and in the modification, the alliance was an intervener. They were given the opportunity to object to the decree on the grounds that it didn't have a deadline. They did not do so. They did not state, if you look in the record of either case, the decree entry, the decree modification, is not a grounds for objection that there's no ultimate deadline. Can I ask one question about that before you sit down? Based on that point you just made, and I'm sure Judge Branch may have some questions too, but this statute says that if the government is diligently prosecuting an action, then an environmental group can intervene in that action.  So they've intervened in the consent decree action. Is there anything that, I'll ask this of your opposing counsel, is there anything that you view, like, do they need a separate action for that can't just be addressed through them making arguments to the same judge who's administering the consent decree action where all the parties are already there and they've already negotiated the settlement? Is there anything that you view as sort of separate or different about having the separate action? Well, it depends on what they're looking for, but to your point, Your Honor, the very things that they're complaining about are exactly what was appropriate to raise before the district court. There's no deadline is their main complaint. So they were given the opportunity twice to make that objection. It did not make it.  I'm going to use the hypothetical, which doesn't exist here, but if there was some element of this that was not being addressed at all, some aspect of the problem, some causes of spills that were just completely not covered by the decree at all, then I think that would be an occasion to bring a citizen in. And I guess maybe by sort of implicitly in that question is I'm thinking sort of maybe that's the test, right? If there's a consent decree and you can get the relief you want by going to the judge that has the consent decree and asking for a modification or enforcement of the consent decree, well, then that should be over there. If it's something that's kind of unrelated to that case that you want to bring your new suit about, then you bring a new suit, but maybe that's what we should be looking at? That's correct. If it's within the ambit of the decree, which, again, you couldn't be any broader here. The decree requires complete compliance for the entire system. So everything is covered. But, yeah, if there's some defect in the decree, doesn't move fast enough, or it ought to have this other monitoring requirement, or they ought to instead of filing six reports a year, they should do eight. Those are the types of things that should have been brought before the district court, before it entered the decree. So to the degree those are their concerns, those are not appropriate here. And, again, they fall so short of the test of meeting dual object prosecution to bring a separate action. It's just not close under any of the case law. I have not found a single circuit court case in particular, really even a district court case, that has allowed a citizen suit to proceed under similar allegations as these. All right, Judge Branch, do you have questions? I do not. Okay, very well. Let's hear from Mr. Schwartz on rebuttal. Thank you very much. Thank you, Your Honor. First of all, I'd like to address the comment that the consent decree that I conceded that the consent decree will fix the entire system or that what Mr. Silliman just said is that the consent decree requires compliance throughout the whole system. The district court expressly found that it does not require spills to stop or have a deadline. And what it does have is what he was talking about is the ongoing sewer and assessment rehabilitation program, but that's just routine maintenance, and that is in our expert report. This is what they should have been doing all along. Now, the CAB may say this is well beyond routine maintenance, but if they had been doing routine maintenance historically, then we wouldn't be in this spot. But, essentially, sewer pipes have about a 50-year life, so every two years you're supposed to be replacing some of them. That's just something that goes on forever. But the consent decree doesn't require compliance because there's nothing in there that compels it. It specifically says that it does not prejudice the rights of non-parties to the consent decree. The South River Watershed Alliance was not a party to the consent decree. They did raise objections to it. But, essentially, when it goes in front of a district court judge for approval, they either approve it or deny it. And the judge deferred to the judgment of EPA and APD. Let me ask you a question. To me, I find that the fact that we're at sort of the consent decree portion is sort of a confusing element of the case. So, just hypothetically, let's assume that the EPA had just filed this lawsuit and was requesting this relief, and then you had filed a suit that said, effectively, we don't think that that relief is going to do enough. We don't think that that relief is going to require compliance. How would this issue get litigated if there were truly sort of a just-initiated civil suit by the EPA and then your kind of tag-along suit saying, we don't think that's going to require compliance? Would the EPA have to kind of come into your suit and say, no, we really are trying to comply with compliance? Like, how would that work? Well, if the suit were just filed, you would look at the complaint and what did EPA request. And in EPA's complaint in the 2010 suit, I think it may have been broad enough. Like, it was kind of nonspecific, but they were trying to stop suits. Yeah, but just hypothetically, let's just assume they were requesting this relief. I'm sure they requested broader relief and negotiated it down, but just assume they were requesting this relief that you think is not sufficient. How would that work? Well, then we could file a citizen suit and say, we're trying to enforce compliance in the other two-thirds of the system, and the court could look at the complaint and say, well, are these covering the same areas? But here, keep in mind, the general purpose of the— And then what would be the court's resolution? I mean, wouldn't the court just look at your complaint and look at the complaint seeking this relief and say, yeah, this complaint filed by the EPA is seeking to enforce compliance. There's no reason to think that they're not going to diligently pursue this prosecution. You know, you should go intervene over there. Well, I understand under your scenario, you're saying that EPA is filing an action in court requesting one-third of the sewer system to come under a deadline to be repaired, and then we're coming in and asking to enforce the Clean Water Act in the other two-thirds of the system, and under that scenario, the court should not find diligent prosecution. And that's consistent with the plain language of the Act. It's also consistent with the purpose of the Act. The purpose of the Act is to restore and maintain the biological, chemical, and physical integrity of the nation's waters, and the Act specifically provides enforcement rights to citizens, and this court has recognized that citizen enforcement and government enforcement are both important. That's Black Warrior Riverkeeper. And again, keep in mind also that the general rule is there should be no violations of the Clean Water Act. Citizens can enforce. The exception to the rule is if the government is diligently prosecuting an action in court to require compliance. Now, exceptions to a rule should be interpreted narrowly. This is their defense. They have the burden to prove that this exception should be applied, and we're focusing on the part that says to require compliance. It's just if it doesn't compel compliance, if they could get out of the consent decree without ever stopping spills in the other two-thirds of the system, it's simply not compliance. And there's nothing in the language of the diligent prosecution provision itself, the context which is used, or the context of the Clean Water Act, to make the phrase to require compliance ambiguous. My time is almost up. Well, now it is up. I request that the court reverse the district court's order and just follow the plain language of the Act. What does it mean to require compliance? If it doesn't ever require spills to stop in the non-priority areas, then this citizen's suit should be allowed to enforce the Act. I appreciate your time. Okay, very much. Thank you very much, both of you. Judge Branch, do you have any further questions before Mr. Schwartz sits down? I do not. Okay, very well. Thank you both very much. All right, we'll submit that case and move on to case number three, which is 21.